NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

LISA MARGARET HARGETT, *Appellant.*

No. 1 CA-CR 15-0621
FILED 11-10-2016

Appeal from the Superior Court in Maricopa County
No.  CR2014-144395-001
The Honorable Annielaurie Van Wie, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Carlos Daniel Carrion
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Randall M. Howe and Judge Donn Kessler joined.

---

J O N E S, Judge:

¶1        Lisa Hargett appeals her convictions and sentences for two counts of aggravated driving under the influence (DUI) in violation of Arizona Revised Statutes (A.R.S.) sections 28-1381(A)(1), (3) and -1383(A)(1).[1]  After searching the entire record, Hargett's defense counsel has identified no arguable question of law that is not frivolous.  Therefore, in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), defense counsel asks this Court to search the record for fundamental error.   Hargett was afforded an opportunity to file a supplemental brief *in propria persona* but declined to do so.  After reviewing the record, we find no error.   Accordingly, Hargett's convictions and sentences are affirmed.

**FACTS[2] AND PROCEDURAL HISTORY**

¶2        Around 8:53 a.m. on February 19, 2013, an officer with the Chandler Police Department responded to a call advising of a white female in a green Honda with a California license plate "possibly impaired, driving all over the roadway" in his area.  The officer observed a vehicle matching that description turn into a convenience store parking lot.  He immediately pulled in behind the vehicle and made contact with the woman in the driver's seat, later identified as Hargett. When the officer asked Hargett for her driver's license and registration, Hargett appeared confused by the request and flipped through her wallet for several minutes before eventually producing her license.

---

[1]      Absent material changes from the relevant date, we cite a statute's current version.

[2]      We view the facts in the light most favorable to sustaining the convictions with all reasonable inferences resolved against the defendant. *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015) (quoting *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

¶3          After a second officer observed signs and symptoms of impairment, Hargett was arrested for DUI and transported to the police station where her blood was drawn, with consent, at 10:49 a.m. Meanwhile, a third officer, while cataloging the contents of Hargett's vehicle, discovered one pipe commonly used to smoke methamphetamine in the driver's side door pocket, and another protruding from a purse found in the trunk.

¶4          After being advised of her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), Hargett agreed to participate in a drug influence evaluation. During the evaluation, Hargett admitted she had taken hydrocodone the day before, smoked methamphetamine around 8:00 p.m. the previous evening, and taken carisoprodol, a muscle relaxant prescribed to address a prior injury to her neck and back, around 4:00 a.m. The officer who performed the evaluation observed that Hargett slurred her speech, had a flushed face, and exhibited a number of other signs of impairment, including lack of convergence in her eyes, horizontal gaze nystagmus (HGN), eyelid tremors, dilated pupils, pupillary unrest, leg tremors, swaying, poor balance, an inaccurate perception of time, unusually low body temperature, elevated heartbeat, piloerection, and raised taste buds. These signs and symptoms are consistent with both central nervous system (CNS) depressant and CNS stimulant use.

¶5          Subsequent testing of Hargett's blood revealed the presence of the CNS depressants clonazepam, meprobamate (a metabolite of carisprodol), and the barbiturate butalbital, as well as the CNS stimulants methamphetamine and amphetamine (a metabolite of methamphetamine), and pseudoephedrine, an over-the-counter decongestant sometimes used as a cutting agent during the production of methamphetamine.

¶6          At trial, criminalists testified a CNS depressant can affect a person's coordination and ability to move fluidly, control eye movements, and divide attention amongst various tasks. Even though the CNS depressants identified in Hargett's blood were each within the therapeutic range individually, the combined effect of these drugs could be amplified when used together. And because the impacted tasks are essential to driving effectively, use or misuse of a CNS depressant can cause impaired driving. A CNS stimulant often has the opposite effects, causing dilated pupils, increased body temperature, body tremors, hyperactivity, and agitation, which can also affect a person's ability to drive, and the level of the CNS stimulants found in Hargett's blood were five to ten times the therapeutic range. Further, the criminalists agreed that when a CNS depressant and CNS stimulant are taken together, the two "don't generally

just counter balance each other." Rather, the combination can exacerbate divided attention task problems. Additionally, the presence of HGN indicators, which occur with CNS depressants but not CNS stimulants, suggests the depressants were still having some quantifiable effect, despite the addition of the stimulant.

¶7        The State also introduced evidence that Hargett's privilege to drive had been suspended and revoked in 2012. Multiple letters were sent to Hargett advising of the action taken against her license, and she was cited with driving on a suspended license in January 2013, just one month prior to her arrest in the immediate case.

¶8        At the close of the State's evidence, Hargett moved for judgment of acquittal pursuant to Arizona Rule of Criminal Procedure 20, arguing insufficient evidence had been presented for the jury to convict her of aggravated DUI because the chain of custody of the blood evidence was flawed and the State did not present any evidence of impaired driving. The motion was denied.

¶9        Hargett testified in her own defense. Hargett denied driving to the convenience store on February 19, 2013, testifying instead she was the passenger in the vehicle being driven by her husband. According to Hargett, she had entered the convenience store and purchased coffee while her husband used the restroom. By the time she returned to her vehicle, keys in hand, a police officer had pulled in and began asking questions about the vehicle, her identification, and her privilege to drive.

¶10       Hargett was confused about the reason for her arrest, but admitted that her license had been suspended, the pipes found in the vehicle belonged to her and her husband, and she had smoked methamphetamine the evening prior to her arrest. She testified the other drugs found in her system were prescribed to her and denied any impairment as a result. She believed, rather, the signs and symptoms identified by the drug recognition expert resulted from a lower back injury and performing the tests barefoot "in the hot pavement" — despite the otherwise undisputed evidence that she was arrested on a February morning and the drug recognition evaluation took place at the police station.

¶11       Hargett also testified her husband had seen the police arrive and left without her noticing; she did not see him again until she was released from custody later that evening. None of the officers recalled Hargett ever mentioning a husband or seeing a man who could have been

Hargett's husband at the time of her arrest, and the husband did not testify at trial.

¶12 The jury found Hargett guilty as charged. The trial court sentenced Hargett as a non-dangerous, non-repetitive offender to four months' imprisonment followed by three years' probation and gave her credit for thirty-six days of presentence incarceration. Hargett timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

¶13 Our review reveals no fundamental error. *See Leon*, 104 Ariz. at 300 ("An exhaustive search of the record has failed to produce any prejudicial error."). A person is guilty of DUI if she "drive[s] or [is] in actual physical control of a vehicle . . . [w]hile under the influence of intoxicating liquor, any drug, a vapor releasing substance containing a toxic substance or any combination of liquor, drugs or vapor releasing substances if the person is impaired to the slightest degree." A.R.S. § 28-1381(A)(1). If a person is impaired while under the influence, it is no defense that the drugs were taken legally. A.R.S. § 28-1381(B). A person is also guilty of DUI if she "drive[s] or [is] in actual physical control of a vehicle . . . [w]hile there is any drug defined in [A.R.S.] § 13-3401 or its metabolite in the person's body." A.R.S. § 28-1381(A)(3). The drugs defined in A.R.S. § 13-3401 include methamphetamine, carisoprodol, clonazepam, and meprobamate. A.R.S. § 13-3401(6)(c)(xxxviii), (d)(v), (d)(xi), (d)(xl). Furthermore, a person is guilty of *aggravated* DUI if she commits a DUI "while [her] driver license or privilege to drive is suspended, canceled, revoked or refused . . . as a result of [a prior DUI]." A.R.S. § 28-1383(A)(1). Based upon the record, sufficient evidence was presented upon which a jury could determine, beyond a reasonable doubt, Hargett was driving under the influence of butalbital, carisprodol, clonazepam, and methamphetamine, while those drugs or their metabolites were in her body, that she did so knowing her license was suspended as a result of a prior DUI, and that these drugs or some combination thereof had impaired her to the slightest degree.

¶14 All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. Hargett was represented by counsel at all stages of the proceedings and was present at all critical stages except for the mornings of two days of trial, for which her presence was voluntarily waived. The jury was properly comprised of eight jurors, and the record shows no evidence of jury misconduct. *See* A.R.S. § 21-102(B); Ariz. R. Crim. P. 18.1(a). At sentencing, Hargett was given an opportunity

to speak, and the trial court stated on the record the evidence and materials it considered and the factors it found in imposing sentences. *See* Ariz. R. Crim. P. 26.9, 26.10. Additionally, the sentences imposed were within the statutory limits. *See* A.R.S. §§ 13-702(D), -902(A)(3), (B)(2), 28-1383(D)(1).

## CONCLUSION

**¶15**          Hargett's convictions and sentences are affirmed. Defense counsel's obligations pertaining to Hargett's representation in this appeal have ended. Defense counsel need do no more than inform Hargett of the outcome of this appeal and her future options, unless, upon review, counsel finds an issue appropriate for submission to our supreme court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85 (1984).

**¶16**          Hargett has thirty days from the date of this decision to proceed, if she wishes, with an *in propria persona* petition for review. *See* Ariz. R. Crim. P. 31.19(a). Upon the Court's own motion, we also grant Hargett thirty days from the date of this decision to file an *in propria persona* motion for reconsideration.

